589 N.W.2d 763 (1999)
456 Mich. 925
In re Dylan OSBORNE, Minor.
Family Independence Agency, Petitioner-Appellant,
v.
Dyphine Osborne, Respondent-Appellee, and
Randall Osborne, Respondent.
Docket No. 112824.
Supreme Court of Michigan.
March 9, 1999.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, Tony Tague, Prosecuting Attorney, and Danielle DeJong, Assistant Prosecuting Attorney, Muskegon, MI, for petitioner-appellant.
Shon A. Cook, Muskegon, MI for respondent/appellee.

OPINION
PER CURIAM.
The probate court terminated the parental rights of a mother, but the Court of Appeals reversed because the assistant prosecutor who tried the termination case had previously represented the mother in this matter. We vacate the judgment of the Court of Appeals, and remand the case for further proceedings.

*764 I
This case involves the parental rights of Dyphine T. Osborne and Randall R. Osborne. Their child is Dylan R. Osborne, who was born May 5, 1994.
Earlier proceedings in probate court led the court to take custody of three older children of Ms. Osborne. The fathers of those children are persons other than Mr. Osborne.
Both Ms. Osborne and Mr. Osborne have had occasion to seek help for problems with mental health. Each has also had difficulty with substance abuse. Their relationship was marked by substantial domestic violence, with each inflicting significant injuries on the other.
The current proceedings began in October 1994, when Dylan suffered a spiral fracture of his left humerus. Although the injury appeared to have been caused by a twisting force, Dylan's parents have acknowledged only that he fell while not properly supervised.
In the months that followed, the probate court conducted at least ten hearings as it attempted to protect Dylan and preserve the family. On three separate occasions, he was removed from his parents' care.
For present purposes, it is not necessary to recount the full procedural history of this matter. However, five different appointed attorneys appeared on behalf of Ms. Osborne, and several assistant prosecutors represented the petitioner (the Muskegon County Department of Social Services).
One of the lawyers who appeared on Ms. Osborne's behalf was Kevin J. Wistrom. He represented her at an August 1995 hearing on a petition to set aside a previous order that barred Mr. Osborne from having contact with Dylan. Ms. Osborne wanted the order lifted.
At the hearing, Mr. Wistrom asked three questions on cross-examination of a fostercare worker employed by the petitioner. He conducted a short direct examination of Ms. Osborne, allowing her to state her views with little interruption. In a nominal cross-examination of Mr. Osborne (he and Ms. Osborne were allied at this stage of the proceedings), Mr. Wistrom asked five additional questions.
After two further hearings (at which Ms. Osborne was represented by two other attorneys), the probate court conducted a hearing on a March 1996 petition for permanent custody. That hearing took place in July and October 1996. By then, Mr. Wistrom had been hired by the Muskegon County Prosecuting Attorney, and he represented the petitioner in the proceedings of July and October. Counsel for Ms. Osborne did not object to Mr. Wistrom's participation.
By that point, it appeared that Mr. Osborne had made significant progress in addressing his substance-abuse problems, and his shortcomings as a parent. It was therefore agreed that the hearing would concern only whether to terminate the parental rights of Ms. Osborne.
At the conclusion of the hearing, the probate court issued an opinion in which it found clear and convincing evidence to terminate the parental rights of Ms. Osborne. The determination was made under M.C.L. § 712A.19b(3)(c)(i), (g); MSA 27.3178(598.19b)(3)(c)(i), (g).[1] Such an order entered in November 1996.
In January 1997, Ms. Osborne applied to the Court of Appeals for leave to appeal. The only issue raised in her application was whether there was clear and convincing evidence to support the termination of her parental rights.[2]
*765 While the application was pending, Mr. Osborne contacted the petitioner, saying that he had resumed drinking and that he was not able to raise Dylan alone. He indicated that he wished to accept termination of his parental rights. Such an order was entered in February 1997 by agreement of the parties.
In April 1997, the Court of Appeals granted Ms. Osborne's application for leave to appeal.
In her May 1997 brief on appeal, Ms. Osborne raised for the first time a claim that Mr. Wistrom's participation at the termination hearing had been improper. She argued that he might have used, to her prejudice, confidential information that he gained while representing her in August 1995. She argued that his participation cast doubt on the integrity of the proceedings.
The attorney representing Dylan contended that the judgment of the probate court should be affirmed. He noted the lack of objection and proposed that the failure to object had prevented the court from inquiring into the prior representation or the effect that it would have in the termination proceedings.
In a brief filed by another assistant prosecutor, the petitioner presented a short argument that emphasized the failure to notice or raise the apparent conflict of interest. The prosecutor concluded that the Court of Appeals did not have enough facts to rule on the issue, and said that, at most, Ms. Osborne would be entitled to an evidentiary hearing on the issue.
The Court of Appeals reversed the termination on the ground that Mr. Wistrom's participation in the hearing was improper. 230 Mich.App. 712, 584 N.W.2d 649 (1998). The Court remanded for a new hearing on the petition for permanent custody. The Court also disqualified the entire office of the Muskegon County Prosecuting Attorney and directed the probate court to appoint a special prosecutor.
The prosecuting attorney has applied to this Court for leave to appeal.

II
The prosecuting attorney's application for leave to appeal was accompanied by an offer of proof from Mr. Wistrom. In his offer of proof, Mr. Wistrom explained that he had been engaged in private practice in the Muskegon area for a number of years before becoming an assistant prosecutor in December 1995. In private practice, he accepted court appointments to represent persons in probate court. He continued:
2. The Muskegon Count [sic] Juvenile Court during this time contracted with six attorneys at any one time to handle child delinquency and neglect matters.
3. It was common for the six attorneys so employed to substitute or "cover" at hearings for one another, even on cases with which they would normally have no involvement.
4. Normally, I would not meet with a client for whom I was "covering" on behalf of another attorney before the hearing in question.
5. My court-appointed caseload would typically involve 50-60 cases at any one time and approximately 200-250 such cases each year. Additionally, I also served throughout that period of time (1990-1995) as a full-time public defender in the Muskegon County Circuit Court, so that my total court-appointed caseload was in excess of 500 cases per year.
6. When I would "cover" a hearing for another of the contact attorneys, I would return the file to them upon completion of the hearing and would not retain any particular record of that involvement other than a calendar entry.
Mr. Wistrom went on to state that he never met with Ms. Osborne on any occasion other than the August 1995 hearing, that he had "no recollection of having obtained any particular privileged information" from her on that occasion, and that he returned the file to the attorney handling the case, at the conclusion of the August 1995 hearing. Mr. Wistrom stated that he was assigned in July 1996 to handle the trial in this case, and
16. At the time I handled this trial, I had absolutely no recollection of having *766 previously represented Dyphine Osborne at the review hearing the previous August.
17. At no time in the course of prosecuting the permanent wardship trial did I use any privileged information obtained from Dyphine Osborne, and I doubt whether I was ever given any privileged information during the brief hour and one half or less in which I was assigned to represent her.
18. Had I recalled having been involved with the representation of Dyphine Osborne, I would have immediately sought to be disqualified from her case, which procedure I did follow in several other such situations. [Emphasis in original.]

III
The Court of Appeals provided a detailed explanation of why a person in Mr. Wistrom's position should not have prosecuted this case on behalf of the petitioner. 230 Mich.App. at 716-720, 584 N.W.2d 649. It is clear that such representation is prohibited by Rule 1.11(c) of the Michigan Rules of Professional Conduct.
Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:
(1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter....
The general rule regarding a conflict of interest involving a prior client is MRPC 1.9. In this circumstance, its provisions are consistent with those of MRPC 1.11. MRPC 1.9(a) provides:
A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
In this regard, see also MRPC 1.9(c):
A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known....
For the reasons well stated by the Court of Appeals, Mr. Wistrom should have recognized and avoided this conflict.[3]

IV
While Mr. Wistrom should not have participated in the termination hearing, the task of formulating a remedy is more difficult. Obviously, the failure of the parties or the court to notice the problem at the time of the hearing prevented timely consideration of the question.
Had the problem come to light at the beginning of the hearing, or even while the proceedings were under way, the probate court would have had the opportunity to inquire whether Ms. Osborne wished to waive the problem[4] or to begin the hearing anew. The court also could have inquired whether Mr. Wistrom acquired confidential *767 information from Ms. Osborne in August 1995. If disqualification of Mr. Wistrom appeared appropriate, the court further could have considered whether to disqualify the entire staff of the prosecuting attorney.[5] Whatever ruling the probate court might have entered, the case still could have been expeditiously resolved to the benefit of Dylan, who needs a safe and permanent home, either with his parents[6] or with adoptive parents.
It may well be that Mr. Wistrom would have been disqualified if this matter had been timely raised in 1996,[7] but it is 1996 no longer. Timing does matter. A request that must be honored if made at the outset of a hearing need not, in every instance, be honored if made ten months later. And a problem that has an obvious solution if timely noticed may have quite a different remedy, or no remedy at all, if noticed at a later stage of the proceedings.
Rules of automatic reversal are disfavored,[8] and we are not prepared to sweep away the 1996 and 1997 proceedings[9] in the absence of demonstrated harm. Though the interests that underlie MRPC 1.9 and 1.11 are of undeniable importance, we cannot hold as naught the last two years of Dylan's life in order to protect those interests.[10]
The existing record does not persuade us that this case must be retried. Further, as the Court of Appeals noted in People v. Doyle, 159 Mich.App. 632, 644-647, 406 N.W.2d 893 (1987),[11] several factors need to be considered in deciding whether to disqualify an entire prosecutor's office. These include the extent to which knowledge has been shared by the disqualified lawyer and the disqualified lawyer's role within the prosecutor's office.
For these reasons, we direct further inquiry into this matter. We vacate the judgment of the Court of Appeals and remand this case to the Court of Appeals. Retaining jurisdiction, the Court of Appeals shall then remand this case to the Muskegon Circuit Court[12] for further proceedings. The circuit court shall take such proofs as it deems appropriate, enter findings of fact and conclusions of law, and determine what further order, if any, should be entered with regard to these proceedings or the parental rights of Ms. Osborne. Further, this case is to receive expedited consideration from the Court of Appeals and the circuit court. MCR 7.302(F)(1).
*768 WEAVER, C.J., and BRICKLEY, MICHAEL F. CAVANAGH, MARILYN J. KELLY, TAYLOR, CORRIGAN, and YOUNG, JJ., concur.
NOTES
[1] The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the age of the child. [MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i).]

The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child. [MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g).]
[2] On behalf of the petitioner, Mr. Wistrom attempted in March 1997 to file a brief in opposition to Ms. Osborne's application for leave to appeal. However, the brief was returned to him because it was late.
[3] The Court of Appeals stated that Mr. Wistrom "committed a serious ethical violation," observing that "[i]t is possible that this violation was unintentional." 230 Mich.App. at 720, n. 4, 584 N.W.2d 649. As set forth earlier in this opinion, Mr. Wistrom has represented to this Court that he was unaware of the conflict.
[4] MRPC 1.11(c) does not say that the consent of the former client can cure the problem. In this regard, compare MRPC 1.11(a); see also MRPC 1.9(c). However, the official "Comment" to MRPC 1.11 suggests that the rule was formulated in significant part to avoid having a former client profit from the fact that the attorney is now working for a government agency. In such a setting, the client's "consent" would hardly solve the problem.
[5] In this regard, the Comment to MRPC 1.11 states:

Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
[6] Recall that, at the time of the termination hearing, Mr. Osborne's situation appeared to have stabilizedthe hearing concerned only the parental rights of Ms. Osborne.
[7] As noted, Mr. Wistrom has stated that, if he had "recalled having been involved with the representation of Dyphine Osborne, [he] would have immediately sought to be disqualified from her case...."
[8] People v. Graves, 458 Mich. 476, 481, 581 N.W.2d 229 (1998); People v. Belanger, 454 Mich. 571, 575, 563 N.W.2d 665 (1997); People v. Pickens, 446 Mich. 298, 346, 521 N.W.2d 797 (1994); People v. Grant, 445 Mich. 535, 543, 520 N.W.2d 123 (1994); People v. McCline, 442 Mich. 127, 134, n. 10, 499 N.W.2d 341 (1993); People v. Mosko, 441 Mich. 496, 502, 495 N.W.2d 534 (1992).
[9] While only Ms. Osborne appealed, we observe that Mr. Osborne's 1997 surrender of his parental rights was not unrelated to the earlier adjudication that terminated Ms. Osborne's rights.
[10] These proceedings were conducted under a statutory chapter that expressly provides that it "shall be liberally construed so that each juvenile coming within the jurisdiction of the court receives the care, guidance, and control, preferably in his or her own home, conducive to the juveniles's welfare and the best interest of the state." MCL 712A.1(3); MSA 27.3178(598.1)(3). These proceedings were primarily for the benefit of Dylan. In the context of an issue like this, we will not reverse

an otherwise proper termination absent a showing that a party suffered an actual deprivation of an important right.
[11] Modified on other grounds (On Rehearing,) 161 Mich.App. 743, 411 N.W.2d 730 (1987).
[12] As noted, these proceedings took place in probate court. Jurisdiction of this case now lies in the family division of the circuit court. MCL 712A.1(1); MSA 27.3178(598.1)(1).