# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES FARRIS,

Plaintiff-Appellant,

v

COUNTY OF ANTRIM and WILLIAM M.
HERRERAN,

Defendants-Appellees.

UNPUBLISHED
January 10, 2017

No. 329816
Antrim Circuit Court
LC No. 14-008902-NM

Before: WILDER, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

James Farris filed suit in an attempt to hold Antrim County and a circuit court administrator financially responsible for the deficient performance of his court-appointed attorneys in a child protective proceeding. Farris's sole grievance lies against those attorneys. Because no act, omission, or contractual duty of the current defendants caused Farris's harm, we affirm the circuit court's dismissal of Farris's claims.

## I. BACKGROUND

The allegations underlying this case arose during a child protective proceeding initiated in 2010. James Farris originally retained attorney Gerald Charland to represent him in that matter. When Farris could no longer pay his attorney fees, Antrim Circuit Court Judge Norman Hayes appointed Charland to continue representing Farris at the county's expense. In 2011, Charland withdrew as counsel of record and Judge Hayes appointed Ross Hickman. During the child protective proceeding, Judge Hayes terminated Farris's parental rights to his son, KF. Following an appeal, the child protective proceeding was remanded to the circuit court for reconsideration in light of *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). *In re Farris*, 497 Mich 959; 858 NW2d 468 (2015). The Department of Health and Human Services thereafter dismissed the petition against Farris and returned KF to Farris's custody.

In 2013, Farris filed a malpractice suit against Charland and Hickman in Grand Traverse Circuit Court. Farris accused his attorneys of various negligent acts causing the termination of his parental rights. In connection with that lawsuit, Farris deposed Charland on March 27, 2014. Charland admitted that he did not have malpractice insurance during the time he represented Farris, and still does not carry such insurance. Farris's counsel inquired:

-1-

*Q*. In order to be appointed, which you were briefly in the NA case, did you have to have malpractice coverage?

*A*. Well, that actually became - - I forgot to - - after they appointed me, the person who runs the appointments, I can't remember his name, but mentioned to me that I could take other appointments and he said, "But you have to have malpractice insurance." And I went, "Oh, I don't have any." And that was also part of the . . . so there was a separate reason, as well as my problems with my client, was that I didn't have it. And I had forgotten that also was part of the reason I wanted to be off it. I didn't want somebody to criticize me for that.

I got on it without them saying it, and then one day he - - whoever it was that ran the contract, came up and asked me if I wanted more appointments. And then I was thinking about it and he says, well, you've just gotta have malpractice insurance and we'll go from there, and I went, oh, okay, I don't have it. [Ellipsis in original.]

Charland did not know if the malpractice insurance requirement was in writing.

On April 30, 2014, Farris deposed Antrim County Family Division Court Administrator William H. Hefferan. Farris asked "what rules, regulations, policies, protocols, whatever you want to call them, were in place . . . in the Family Divisions in Antrim County for the appointment of counsel for indigents?" Hefferan directed Farris to a local administrative order effective January 1, 2004. Farris continued that he understood "that there was also a requirement that lawyers have malpractice insurance[.]" Hefferan indicated that this was the court's "practice" but that it had not been reduced to writing and it was not included in the administrative order. As far Hefferan remembered, the requirement "must have come from" a "conversation" with Judge Hayes. Hefferan could not recall, however, why Judge Hayes wanted to ensure that appointed attorneys possessed malpractice insurance. Ultimately, Hefferan described the malpractice insurance requirement as a "practice" and not a "policy" because it was orally communicated and not in writing. It was still "something you would hope and expect to do every time[.]"

In regard to how this requirement was communicated to attorneys, Hefferan described, "Generally speaking, if a new, quote, unquote, new attorney contacted me and asked to be placed on our rotation, . . . I would ask for a letter of interest and a copy of their malpractice insurance." In relation to "lawyers who have been around for awhile [sic]," Hefferan asserted, "Well, it's become clear to me now that" neither he nor his staff asked them for proof of insurance.

In relation to attorney Charland, Hefferan possessed no evidence that Charland carried malpractice insurance and no proof that the court asked Charland for his policy before appointing him to represent Farris. When asked why Charland was not advised of the insurance requirement immediately, Hefferan responded, "I don't have an answer for that." Judge Hayes appointed Charland even though he was not previously on the appointment list because Charland had been representing Farris as retained counsel until that date. As of the date of Hefferan's deposition, every attorney on the appointment list carried the requisite insurance. That list no longer included attorney Hickman. "As of last Friday he asked to be removed from, I say the list, our

court appointments." Hefferan requested that Hickman provide proof of malpractice insurance and Hickman initially expressed an intent to secure such insurance. However, Hickman chose instead to be removed from the appointment rotation. When asked why Hefferan had not advised Hickman of the malpractice insurance requirement when he was first added to the list, Hefferan replied, "Again, I do not have an answer for that." Hefferan now asks for proof of insurance annually from attorneys on the appointment list.

Following these depositions, Farris filed suit against Antrim County and Hefferan in Antrim Circuit Court. The vast majority of Farris's 39-page complaint outlines the facts underlying the child protective proceedings and the various deficiencies in his attorneys' performances. Not until page 36 does Farris reach the subject of the current dispute:

262. More than 50 years ago, the United States Supreme Court, in *Gideon v Wainwright*, recognized the "obvious truth" that lawyers in criminal cases are "necessities, not luxuries."

263. For a long time, Michigan has honored this constitutional obligation by delegating to each county, including Antrim, responsibility for funding and administering trial-level indigent defense services within its borders, including adjudications which may result in loss of parental rights.

264. Mr. Charland and Mr. Hickman, were appointed successor trial court counsel for Mr. Farris pursuant to delegation by contract.

265. The County should and did require that each lawyer appointed through this process maintain adequate financial responsibility, including malpractice insurance coverage.

266. Mr. Charland and Mr. Hickman, successively, in representing Mr. Farris as aforesaid, was acting as the ostensible or actual agent of Antrim County in fulfilling its delegated obligations, and thus the County is responsible for their acts and omissions under *respondeat superior* principles.

267. The contract between Antrim County and Mr. Farris's lawyers, entered pursuant to their appointment as his counsel as aforesaid, was entered with the intent to benefitting him.

268. The benefit was, of course, to satisfy a legal obligation and, made Mr. Farris therefore, a third party beneficiary of the contract who acquires rights under that contract.

269. Under MCL 600.1405 any person for whose benefit a promise is made has the right to enforce it, even though he or she is not a party to the contract.

270. Mr. Farris as a citizen may sue as a third party beneficiary to the contract by which Mr. Charland and Mr. Hickman were appointed as his counsel because, if Antrim County had not fulfilled its obligation to provide indigent legal counsel, it would have been subject to a direct claim for damages.

271. Mr. Hefferan identified as Defen[d]ant, is the Antrim County Family Division Court Administrator, a job he has held for nearly 17 years.

272. Pursuant to its own administrative order, Antrim County took on the responsibility of managing indigent criminal defense attorney appointments, which included, among others, appointments of attorneys in termination of parental rights cases.

273. That policy was required by the Supreme Court to be effective January 1, 2004.

274. That policy was in effect during all the times relevant to the events described in . . . this Complaint.

275. It was the practice of Antrim County to require malpractice insurance from every lawyer as a condition of being on the list to receive such appointments.

276. In the case of Mr. Charland's appointment to represent Mr. Farris, he was never even required to apply to be on the list and he was not on the list.

277. In the case of Mr. Hickman's appointment to represent Mr. Farris, he was on the list although he had never provided proof of malpractice insurance.

278. It was a directive from the Judge of the Family Division of the Antrim County Circuit Court that attorneys on the list prove their malpractice insurance by providing a copy of their policy or other written proof that they were insured directly to the Court Administrator.

279. Incidentally, that Judge who implemented that policy was the same Judge Hayes who decided the underlying termination of parental rights case.

280. It was Judge Hayes' directive to Mr. Hefferan that the policy and expectation of the Antrim Court would be for all appointed attorneys to have and maintain that malpractice insurance.

281. Even though Mr. Hefferan calls it a "practice" and not a "policy" of Antrim County, all he means by the difference is that the former [practice], while applicable every time the situation comes up, is not in writing, whereas the latter [policy] is.

282. Over the years the policy/practice has been in effect, Mr. Hefferan did nothing to confirm or assure that the lawyer who is being considered for appointment had malpractice insurance in place.

283. His failure over many years to take any action whatever to implement the policy/practice was and is grossly negligent.

284. Neither Mr. Charland nor Mr. Hickman has or had malpractice insurance.

-4-

285. Neither Mr. Charland nor Mr. Hickman ever provided any documentation to Mr. Hefferan in particular or to Antrim County in general asserting that they had malpractice insurance.

286. And yet both Mr. Charland (who is not on the list) and Mr. Hickman (who was on the list) received appointment to represent Mr. Farris all as aforesaid.

287. Mr. Hefferan has acknowledged that he never talked to Mr. Hickman or to Mr. Charland about the requirement of malpractice insurance.

288. Mr. Hefferan has acknowledged that he never wrote to Mr. Charland or Mr. Hickman about the requirement of malpractice insurance.

289. Mr. Charland's and Mr. Hickman's lack of financial responsibility has diminished the value and prospects of Mr. Farris' otherwise meritorious legal malpractice case against them.

While this case was pending, a stipulated judgment for $1,482,000 entered against Charland in the Grand Traverse malpractice action. The lower court docket sheet in the Grand Traverse matter reveals that an arbitrator awarded Farris a $150,000 judgment against Hickman after Farris filed his appellate brief in the 2014 case.

On January 2, 2015, defendants filed a motion for summary disposition in this case under MCR 2.116(C)(7), (8), and (10). The county claimed governmental immunity pursuant to MCL 691.1407(1) as a governmental entity engaged in a governmental function. Moreover, the county contended that it was not the employer or principal of the attorneys appointed by the court, merely the provider of recompense as required by statute. Therefore, it could not be held vicariously liable for the attorneys' malpractice. Appointed counsel performed pursuant to statute as well and no contract existed between the attorneys and the county or even the court. Accordingly, Farris's claim to relief as a third-party beneficiary of some contract lacked merit.

In relation to Hefferan, defendants contended that Farris could only overcome governmental immunity if he established that Hefferan acted with gross negligence. "At best," defendants insisted, "Hefferan's failure to require proof of malpractice insurance from Charland and Hickman establishes only ordinary negligence[.]" Even if Hefferan was grossly negligent, the failure to collect proof of malpractice insurance "was not *the* proximate cause" of Farris's injury, Charland's and Hickman's deficient representation was. As such, Hefferan could not be held liable.

Farris retorted that Hefferan's gross negligence could be established. This was not a case of a job done poorly, the quality of which could be rated as ordinary or gross negligence. This was a case where an employee admitted he did nothing to implement his government employer's policy or practice. Doing nothing under such circumstances "demonstrate[d] . . . a substantial lack of concern for whether an injury will occur." Farris cited a string of cases, which he claimed stood for the proposition that gross negligence can be established when an actor systemically fails to follow the rules.

Farris did not respond to defendants' challenge of his respondeat superior claim, mistakenly asserting that defendants had not raised the issue. Farris merely repeated his argument that appointed attorneys are at least ostensible agents of the county. And Farris made no attempt to establish that a contract existed to support his third-party beneficiary claim. Instead, he focused on why he would be deemed a beneficiary and assumed the existence of a contract.

Defendants volleyed back. They disputed the existence of a policy requiring appointed attorneys to possess malpractice insurance. To the extent there was any policy, it was Judge Hayes's policy, not the county's. Judge Hayes created the requirement through a verbal directive. Defendants further distinguished the cases cited by Farris, denying that they created a gross negligence standard for employees who failed (even repeatedly) to follow a policy. Defendants then noted Farris's complete lack of evidence (or even argument) that any contract existed between appointed counsel and the county (or even the court) and emphasized that the duty to appoint attorneys is statutory only.

The court heard the parties' arguments on October 19, 2015. The court began by advising Farris, "I was having trouble figuring out what the contract is." There is a duty on the judge to appoint counsel by court rule, statute, and constitution, but "[t]hat's not really a contract," the court explained. If any contract did exist, it would be between the *court* and the attorneys; the county merely bears a statutory or court rule duty to foot the bill.

Farris replied that a contract arose between the county and the appointed counsel through the promise to pay. "It is a contract between the county and the lawyer who's going to do those services. Because once the lawyer is appointed, he is paid according to the rates that the county has agreed to pay in its program for appointed counsel."

The county retorted by citing the appointment-of-counsel administrative order:

> And that administrative order clearly, clearly states that the sole authority for reviewing the performance of attorneys on the court-appointed list belongs to the presiding judge. That the sole authority to remove an attorney from that court-appointed list belongs to the judge, if the judge believes that the attorney's performance is not acceptable.
>
> The administrative order also clearly states that it is the responsibility of the presiding judge to - - to supervise the operation and to - - of the court-appointed system within his or her court. Even the appointment itself is determined - - only the presiding judge has discretionary authority over that . . . [and] can steer away from that rotating appointment basis if the judge believes that the attorney who's up next does not have the necessary expe[r]ience that is needed for the assignment.

The county's only duty is to pay the attorneys, a duty imposed by MCL 775.16, not contract. "[T]he county does not supervise these attorneys. The county has no role in their appointment. The county does not even determine who goes on these lists." And Farris's respondeat superior claim failed as well as it was based completely on his erroneous contract theory.

In relation to the gross negligence claim, Farris asserted that Hefferan "intentionally . . . did not do what his boss told him to do." The court questioned this characterization of Hefferan's intent, noting that Hefferan failed to do a single task "as opposed to the hundreds of other things he has to do, you know, running a court." Defendants echoed the court, "[T]he Court has hit the nail on the head. That, if anything, Mr. Hefferan made a mistake. . . ." In relation to Charland, although Hefferan forgot to question him about malpractice insurance when appointed, Hefferan remembered when he asked Charland if he would be interested in future appointments. Moreover, even if Hefferan's conduct was grossly negligent, Farris also had to present evidence that Hefferan's negligence was "the proximate cause" of his injury. The proximate cause of Hefferan's injury was the deficient performance of his counsel, not Hefferan's failure to ensure that the attorneys carried malpractice insurance, defendants insisted.

Ultimately, the court granted defendants' summary disposition motion and dismissed Farris's claims in their entirety. The court determined that Farris had not created a triable question of fact on his gross negligence claim against Hefferan. Hefferan could only be held liable if his conduct was "so reckless . . . as to demonstrate a substantial lack of concern to whether an injury results." "All we have here," the court reasoned, was a "fail[ure] to secure a proof of malpractice insurance from these two lawyers." This was insufficient to "demonstrate that [Hefferan] actually contemplated that injury might result and I don't care." "At most, this is a simple mistake," possibly amounting to ordinary negligence.

The court also found no evidence of any contract between the county and the attorneys to which Farris could have been a third-party beneficiary. The court found the statute cited by the parties—MCL 775.16—inapplicable as it pertains to felony criminal cases, not child protective proceedings. Even without the statute, the duty to appoint counsel falls on the court, not the county. "The county doesn't appoint the person." The county did not have any contact with Hickman and Charland beyond mailing them a check. It was even the court's job to determine the amount of that recompense. The county's duty to pay is born of statute and court rule, not a contract. As there was no contractual relationship regarding the representation, Farris could not be a beneficiary.

Farris appeals.

## II. GROSS NEGLIGENCE

Farris first challenges the circuit court's dismissal of his tort claim against Hefferan. We review de novo a lower court's resolution of a summary disposition motion. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The court did not cite the court rule provisions upon which it relied in dismissing Farris's complaint, but appears to have proceeded under MCR 2.116(C)(7) and (10).

> Under MCR 2.116(C)(7), the moving party is entitled to summary disposition if the plaintiff's claims are " 'barred because of immunity granted by law . . . .' " The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with "affidavits, depositions, admissions, or other documentary evidence," the substance of which would be admissible at trial. "The contents of the complaint are accepted as true unless contradicted" by the evidence provided.

-7-

In relation to a motion under MCR 2.116(C)(10), we similarly review "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." [*Odom*, 482 Mich at 466-467 (citations omitted, alteration in original).]

Pursuant to MCL 691.1407(2), a governmental actor is immune from tort liability for injuries caused in the course of employment while acting on behalf of his or her government employer if:

(a) The [individual] is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The [individual's] conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).[1] To meet his or her burden, a plaintiff must present evidence of more than mere ordinary negligence. *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999).

[G]ross negligence . . . suggests . . . almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

Farris's evidence did not rise to the level of gross negligence. Farris characterizes Hefferan as completely failing to implement a policy or practice of his employer. The evidence does not support this proposition. Hefferan admitted that he and his employees had omitted to secure proof of malpractice insurance from attorneys who had been on the appointment list for an extended period. However, they always asked for such proof from attorneys newly seeking appointments from the Antrim Circuit Court. In this case, Hefferan did not request proof of malpractice insurance from Charland when he was first appointed. Yet, Farris had previously retained Charland signaling his own disregard for Charland's financial responsibility. Hefferan did inform Charland of the malpractice insurance requirement shortly thereafter and Charland

---

[1] During argument before the circuit court, Farris implied that Hefferan acted intentionally in disobeying Judge Hayes' directive and therefore could not claim immunity. Governmental immunity does not apply when a governmental actor commits an intentional tort. MCL 691.1407(3); *Odom*, 482 Mich at 471-472. Farris does not reiterate this claim on appeal.

agreed to withdraw, in part, because he did not carry the necessary insurance. It is true that Hefferan did not confer with Hickman regarding his malpractice coverage until after this suit was filed. But falling short in one aspect of his duties does not, standing alone, render Hefferan's conduct grossly negligent.

The record is even clearer that no evidence supports that Hefferan's failure to secure proof of Hickman's and Charland's malpractice insurance was the proximate cause of Farris's injuries. It is well established that "the" proximate cause of a plaintiff's injury is "[t]he one most immediate, efficient, and direct cause." *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). The most immediate, efficient, and direct causes of Farris's injuries were the malpractice of his attorneys and their failure to carry malpractice insurance. Hefferan's failure to secure proof of malpractice insurance may impact Farris's ability to collect the judgments entered in that separate lawsuit, but it did not affect the performance of counsel in the course of the representation and did not singularly cause Hefferan's incollectibility. Accordingly, the circuit court properly dismissed Farris's tort claim against Hefferan.

## III. THIRD-PARTY BENEFICIARY

Farris also contends that the circuit court improperly dismissed his claim to relief as a third-party beneficiary of a contract between the attorneys and the county.[2] In order to be a third-party beneficiary, there must be a contract to benefit from. See MCL 600.1405. No such contract existed in this case.

It is not unheard of for a circuit court, or even a county, to execute a contract with attorneys seeking appointment to represent indigent clients. See, e.g., *In re Osborne*, 459 Mich 360, 365; 589 NW2d 763 (1999) ("The Muskegon Count[y] Juvenile Court during this time contracted with six attorneys at any one time to handle child delinquency and neglect matters."); *In re Bennett*, 403 Mich 178, 186; 267 NW2d 914 (1978) (noting that the judge at the center of a judicial tenure review terminated a contract with a law firm acting as public defenders and appointed substitute counsel in the firm's stead); *In re Attorney Fees of Klevorn (People v Koschiecha)*, 185 Mich App 672, 674-675; 463 NW2d 175 (1990) (in which an attorney entered a contract with Charlevoix County to accept indigent criminal appointments for a specified hourly rate). However, it is undisputed that no such express contract existed in this case.

Even if a contract between the county and appointed attorneys did exist or could be implied, Farris's third-party beneficiary claim would have no merit. MCL 600.1405 provides: "Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." The only promise between the county and appointed attorneys is for the county to pay for services performed for indigent parties. There is no promise in return for the attorneys to serve the county or to provide a certain level of services to the indigent clients. The only promise that Farris could possibly enforce would be the county's promise to pay his appointed attorneys.

---

[2] Farris has abandoned his separate respondeat superior claim.

As noted by the county, only the circuit court supervises or guides the actual performance of appointed counsel. Specifically, the presiding judge has the power to "remove any attorney from the list who has not performed his or her duties at an acceptable level." Antrim County Circuit Court/Family Division Admin Order 2003-05J, § 1a. Even this "promise" is not made by contract, it is made by administrative order. Accordingly, Farris could make no claim even against the circuit court. Farris's contractual claim has no contract at its base and therefore is insupportable.

We affirm.

/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher