*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 28, 2021

v

No. 347863
Shiawassee Circuit Court
LC No. 2018-003022-FH

AARON SCOTT MIENKWIC,

Defendant-Appellant.

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

PER CURIAM.

Defendant, Aaron Scott Mienkwic, was convicted by a jury of first-degree retail fraud on an aiding and abetting theory, MCL 750.356c; conspiracy to commit first-degree retail fraud, MCL 750.356c; receiving and concealing stolen property worth between $1,000 and $20,000, MCL 750.535(3)(a); and possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(*v*). Defendant was acquitted of possession of less than 25 grams of fentanyl, MCL 333.7403(2)(a)(*v*). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to an upward departure sentence of concurrent terms of 76 to 114 months' imprisonment for the counts of retail fraud and concealing stolen property, and 2 to 15 years' imprisonment for possession of heroin, with credit for 62 days served. Defendant appeals by right. We reverse defendant's convictions and remand for further proceedings.

## I. BACKGROUND

According to the testimony at trial, on October 23, 2017, Kyle Tower asked defendant for a ride to a Meijer store in Swartz Creek, Michigan, for the purpose of Tower stealing items from the store. Tower, who had pleaded guilty to first-degree retail fraud and conspiracy to commit first-degree retail fraud pursuant to a plea agreement by the time of defendant's trial, testified that defendant knew Tower's intentions, but that defendant was only the driver and was not to receive any part of Tower's illicit gains. At the Swartz Creek Meijer, Tower shoplifted several items, including internet routers, modems, and a Bizzell Pet Bath, worth a total of $1,609.91. Defendant permitted Tower to place the stolen items in the trunk of his car. Defendant then drove Tower to a Walmart store in Owosso, Michigan. As he had done at the Meijer, Tower shoplifted additional

-1-

items of electronics worth a total of $2,363.18. However, Tower was stopped just outside the door by Walmart loss prevention specialist Darrell Henderson, whereupon Tower abandoned his shopping cart full of stolen items and fled. Tower testified that he had expected defendant to be in the parking lot, but because defendant was not there, he ran to a Big Boy restaurant that shared the parking lot with Walmart. Tower testified that his phone was dead, so he asked a Big Boy employee to borrow a charger. He then called defendant to pick him up. Tower testified that he then left the restaurant and was arrested on his way to defendant's vehicle.

Approximately contemporaneously, defendant entered the Big Boy and placed a to-go order. An employee testified that defendant was acting "erratic" and "finicky." Defendant was observed to take a to-go menu and then place it back under a stack of menus. A piece of what employees initially believed to be trash was found inside the menu. Employees initially threw it into the garbage, but then retrieved it and handed it to the police. Subsequent testing revealed the item to contain a mixture of heroin and fentanyl. When police officers arrived on the scene, after arresting Tower, they checked the license plate on defendant's vehicle and found it registered to defendant. Police entered the Big Boy restaurant and arrested defendant. An inventory search of defendant's vehicle revealed multiple electronics with security devices still attached. Defendant claimed to officers that he had purchased the items from eBay and two other online marketplaces. The items were confirmed to have been taken from the Swartz Creek Meijer.

The trial prosecutor in this matter was Scott Koerner, who was an assistant prosecuting attorney at the time of trial on December 18 and 19, 2018, and he is currently the elected prosecuting attorney for Shiawassee County.[1] As noted, Tower pled guilty to first-degree retail fraud and conspiracy to commit first-degree retail fraud arising out of the same shoplifting scheme at issue in this matter, in 35th Circuit Court Case No. 2017-2157-FH. At the time of Tower's plea hearing on February 21, 2018, Koerner represented Tower as Tower's defense attorney. Tower indicated at that plea hearing that Koerner had made himself available to answer questions or concerns. Koerner also represented Tower at Tower's sentencing on April 20, 2018.[2] During a statement to the trial court, Koerner stated that he had "actually got to know [Tower] over the last six months" and eloquently advocated for Tower's admission to the Genesee County Drug Court program. The same trial judge presided over defendant's trial in this matter and over the hearings for Tower. Koerner joined the Shiawassee County prosecutor's office between Tower's sentencing and defendant's trial. Despite a staff of five attorneys,[3] Koerner came to prosecute his former client's alleged coconspirator, even calling his former client, Tower, to the stand as a lead witness. Koerner's close relationship with and knowledge of Koerner was never disclosed to

---

[1] Koerner became an assistant prosecuting attorney on May 28, 2018, and he became the Shiawassee County Prosecuting Attorney on April 1, 2020, a position in which he still serves. Koerner previously was in private practice.

[2] Thus, Koerner became an assistant prosecuting attorney slightly more than a month after representing Tower at Tower's sentencing. The trial in the instant case took place approximately eight months after Tower's sentencing.

[3] < https://www.shiawassee.net/Prosecuting-Attorney/ >

defendant or his trial counsel on the record (or seemingly at all), and was not even commented upon by the trial judge.

Defendant argues that he was deprived of a fair trial because the trial prosecutor in this matter failed to disclose a conflict of interest. We find disclosure relevant only to defendant's preservation of this objection, because Koerner was obligated to decline the matter altogether. We therefore agree that defendant is entitled to a new trial. However, for the purpose of avoiding any double jeopardy issues, we nevertheless also consider defendant's sufficiency of the evidence argument and conclude that, although the trial was impermissibly tainted by Koerner's misconduct, the evidence would have been sufficient to support the jury's verdict.

## II. PRESERVATION OF ISSUE

This issue was raised for the first time on appeal, so it is not, strictly speaking, preserved. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). However, "[t]he purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice." *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997). The issue preservation requirements do not require parties to perform impossibilities. *Lee v Marsh*, 19 Mich 11, 13 (1869). Here, defendant contends that the prosecutor did not disclose the conflict of interest and, implicitly, defendant did not learn of the conflict of interest until after the trial was over. Justice would not be served by applying the issue preservation requirements where a party could not have raised the issue below. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). Alternatively, if defendant's trial counsel *did* know of the conflict and failed to object, trial counsel's conduct would have been objectively deficient, and this Court has some leeway to consider evidence outside the record when considering ineffective-assistance claims. See *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013).

Furthermore, constitutional errors that could have been decisive of the outcome may be considered for the first time on appeal. *Grant*, 445 Mich at 547. Although failure to preserve an issue may limit a party's right to review of that issue, this Court may, under exceptional circumstances, consider issues not preserved or not presented in the interest of justice. See *Paschke v Retool Industries (On Reh)*, 198 Mich App 702, 705; 499 NW2d 453 (1993), rev'd on other grounds 445 Mich 502; 519 NW2d 441 (1994). This issue implicates the fundamental fairness of defendant's trial. We therefore choose to fully review this issue. Furthermore, we have chosen to take judicial notice of certain transcripts provided by defendant that were not included in the lower court record. See *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015), citing MRE 201.

## III. PROSECUTORIAL MISCONDUCT

The term "prosecutorial misconduct" is frequently misused as a term of art rather than an accurate descriptor for what is really merely prosecutorial error, but the instant matter entails a rare occurrence of the prosecutor's actions rising to the level of true misconduct. See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Michigan courts have not hesitated to find an impermissible conflict of interest where a prosecutor has previously represented a respondent in a termination of parental rights case. *In re Osborne* (*Osborne I*), 230 Mich App 712,

716-720; 584 NW2d 649 (1998), adopted in relevant part and vacated on other grounds *In re Osborne* (*Osborne II*), 459 Mich 360, 366-367; 589 NW2d 763 (1999). Likewise, a prosecutor who previously represented a criminal defendant is also disqualified. *People v Davenport*, 280 Mich App 464, 468-471; 760 NW2d 743 (2008). Courts have also found impermissible conflicts of interests when an attorney's representation of a new client is directly adverse to the interests of a prior client. *Barkley v City of Detroit*, 204 Mich App 194, 199-209; 514 NW2d 242 (1994). The specific situation at bar, where the prosecutor represented defendant's coconspirator and called that former client as a lead witness, appears to be novel. However, the applicable principles are not.

We note that in *Davenport*, the prosecutor merely worked in the same office as another attorney who had previously represented the defendant, and the question was largely whether the prosecutor's office had properly isolated the two prosecuting attorneys from conveying information about the defendant to or from each other. This Court expressed no doubt that the defendant's former attorney who had joined the prosecutor's office was disqualified, and at issue was whether the *entire* prosecutor's office was also disqualified. See *Davenport*, 280 Mich App at 466-468, 470-472. Significantly, this Court observed that there was a presumption, albeit a rebuttable one, that the prosecutors in the office had shared confidences. *Id*. at 474-475. In contrast, the instant matter entails disqualification of the same attorney.[4] The only possible factual question, whether Koerner did disclose his former representation to defendant's trial counsel as he avers, is irrelevant. Rather, Koerner should have realized that he was obligated to decline this matter, irrespective of defendant's consent, especially where alternative prosecuting attorneys were in ample supply.[5] There are no relevant facts that need to be resolved, so there is no basis for holding an evidentiary hearing in this case.

Prosecutors are not ordinary attorneys: they occupy a special position in our system of jurisprudence to "obtain justice, not merely to convict;" and to preserve "public confidence in the impartiality and integrity of the criminal justice system." *People v Doyle*, 159 Mich App 632, 643-644; 406 NW2d 893 (1987), mod in part on other grounds on reh 161 Mich App 743; 411 NW2d 730 (1987). Prosecutors therefore owe unique a duty to the accused and to the citizenry at large to ensure that criminal trials both are fair and appear fair. *Id*.; *Engle v Chipman*, 51 Mich 524, 525-526; 16 NW 886 (1883); *People v Evans*, ___ Mich App ___, ___; ___ NW2d ___ (2020), Docket No 343544, slip op at p 7, citing *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 2d 1314 (1935); see also, *People v Carmichael*, 86 Mich App 418, 423; 272 NW2d 667 (1978). "[T]he prosecuting attorney, and any one associated with him, must be exclusively a representative of public justice, and stand indifferent as between the accused party and any private interest." *People v Auerbach*, 176 Mich 23, 44; 141 NW 869 (1913). Indeed, the prosecutor's "duty of impartiality" has been described as "not altogether unlike that of the judge himself." *Meister v People*, 31 Mich 99, 104 (1875). Thus, prosecutors may be disqualified out of fairness

---

[4] Additionally, it was unclear in *Davenport* which of the two prosecuting attorneys in the office was the elected prosecutor. See *Davenport*, 280 Mich App at 472 n 3.

[5] Furthermore, it would have been Koerner's responsibility to make a proper record, in any event.

to the accused, or merely to avoid the appearance of impropriety[6] even in the absence of proof of bad faith or unethical conduct. *Doyle*, 159 Mich App at 643-644.

> Michigan Rule of Professional Conduct (MRPC) 1.11(c)(1) provides:
>
> Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not . . . participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter[.]

Koerner's statements at Tower's sentencing reveal that Koerner served as an exceptional advocate for Tower and must have had more than a merely passing familiarity with Tower. This included Koerner successfully advocating for Tower to remain in the Genesee County Drug Court instead of going to prison. Clearly, Koerner participated "personally and substantially" in Tower's defense. As discussed, there were other attorneys available in the prosecutor's office, and Koerner was not the elected prosecutor at the time, so there is no excuse for Koerner not recusing himself. Koerner's function of impartially and fairly seeking justice was obviously compromised by his extensive and intimate relationship with defendant's coconspirator, especially given Koerner's reliance on Tower as a lead witness in this matter. Koerner's conduct both was improper and appears, accurately or not, to be exploitation of an unfair advantage for the sake of a conviction rather than in furtherance of justice.

We conclude that Koerner's participation in this matter a prosecutor violated MRPC 1.11. Koerner should have realized that his participation was unethical, impermissible, and offensive to maintaining the appearance of integrity and fairness.

## IV. REMEDY

Our Supreme Court has declined to automatically, or "in the absence of demonstrated harm," reverse a termination of parental rights several years after-the-fact on the basis of a

---

[6] The "appearance of impropriety" standard is no longer applicable, under the current Michigan Rules of Professional Conduct, to vicarious disqualification of attorneys in general; in lieu of a more functional approach based on the preservation of confidentiality and the avoidance of positions adverse to clients. See comment following MRPC 1.9. In *Doyle*, this Court concluded that an appearance of impropriety was sufficient by itself to disqualify the prosecutor individually. See *Doyle*, 159 Mich App at 644. That holding may no longer be entirely accurate. However, the weight and history of the case law concerning the importance of prosecutorial integrity and impartiality compels the conclusion that the appearance of propriety and fairness remains relevant to prosecutors in particular. In any event, *Doyle* observed that the "appearance of impropriety" standard was only pertinent to situations in which prosecutors had a personal interest in the litigation, rather than situations in which prosecutors were disqualified due to a professional conflict of interest. *Doyle*, 159 Mich App at 141-146. Because we find that Koerner violated MRPC 1.11, the fact that his misconduct also gives the appearance of impropriety is, in effect, little more than "the icing on the cake."

prosecutor's disqualification. *Osborne II*, 459 Mich at 367-370. However, that case involved concerns not present here: child protective proceedings are primarily for the protection of the child, who needed a safe and permanent home, which militated against "sweeping away" two years of interim proceedings. *Id*. at 368-369. Furthermore, in that case, the prosecutor only represented the respondent briefly at one hearing while covering for another attorney, had no recollection of obtaining any privileged information from the respondent, and may not have even met the respondent. *Id*. at 365-366. In contrast, here, defendant is incarcerated on the basis of a clearly unfair and improper trial, it is completely impossible for Koerner to have innocently failed to realize the connection between defendant and his former client, and Koerner appears to have exploited his relationship with Tower in derogation of his duty to seek justice with fairness and integrity. Under the circumstances, there is more than merely an appearance of impropriety; the egregiousness of Koerner's ethical violation fundamentally undermines the integrity of defendant's trial and necessitates reversal.

Our Supreme Court has also held that "several factors need to be considered in deciding whether to disqualify an entire prosecutor's office." *Osborne II*, citing *Doyle*, 159 Mich App at 644-647. Here, however, the elected Prosecuting Attorney is clearly disqualified and has engaged in a violation of the rules of professional conduct. Under such circumstances, no further consideration is needed, and the entire Shiawassee County prosecutor's office must be disqualified. *People v Mayhew*, 236 Mich App 112, 127; 600 NW2d 370 (1999). In addition, because defendant is entitled to a new trial, assignment to a new judge on remand would not cause needless waste or duplication. See *People v LeMarble (After Remand)*, 201 Mich App 45, 49; 505 NW2d 879 (1993). Out of an abundance of caution, any retrial shall be held before a different trial judge.

## V. SUFFICIENCY OF THE EVIDENCE

Our holding above does not end our inquiry, because defendant has also raised a claim of insufficient evidence as to his conviction for conspiracy to commit first-degree retail fraud. Double jeopardy principles obligate us to resolve that claim. See *Pattison v Haskins*, 470 F 3d 645 659-660 (CA 6, 2006). An appellate finding of insufficient evidence "is the equivalent of an acquittal" and bars retrial. *Richardson v United States*, 468 US 317, 325; 104 S Ct 3081; 82 L Ed 2d 242 (1984). We conclude that, although defendant is entitled to a new trial because Koerner's misconduct unacceptably tainted the trial defendant received, the evidence introduced would have been sufficient to support defendant's conviction.

We review a sufficiency of the evidence claim de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. [*People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).]

It is the province of the trier of fact to determine what inferences may be fairly drawn from the evidence. *Id*. at 514-515. "Circumstantial evidence and reasonable inferences arising from that

evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation omitted). The jury may not "engage in pure speculation." *People v Bailey*, 451 Mich 657, 673; 549 NW2d 325 (1996) (quotation marks omitted). However, the courts generally may not otherwise interfere with the jury's role of choosing what evidence that was actually introduced should be believed. See *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883).

"Establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective." *People v Blume*, 443 Mich 476, 481; 505 NW2d 843 (1993). Knowledge of the illegal objective is not sufficient to establish involvement in a conspiracy, but knowledge is an essential part of a defendant's participation. *Id*. at 483-484. Proof of a conspiracy requires evidence that two or more individuals specifically intended to achieve, promote, or further the illegal objective. *People v Justice*, 454 Mich 334, 346-347; 562 NW2d 652 (1997). A conspiracy may be established by drawing reasonable inferences "from the circumstances, acts, and conduct of the parties." *Id*. at 347. The crime of conspiracy punishes the agreement to and planning of a substantive offense, whereas aiding and abetting is a theory under which the substantive crime is itself punished. See *People v Hamp*, 110 Mich App 92, 102-104; 312 NW2d 175 (1981). A conviction on an aiding and abetting theory does not necessarily require the defendant to have intended the commission of the crime. *People v Robinson*, 475 Mich 1, 6-7; 715 NW2d 44 (2006). Furthermore, mere presence during, and even failure to intercede in, the commission of a crime does not make that person guilty of that crime. See *People v Chapman*, 62 Mich 280, 283; 28 NW2d 896 (1886).

Defendant tacitly concedes that there was ample evidence showing that he knew of Tower's criminal objectives at the time defendant drove Tower to Meijer and Walmart. In addition, Tower testified that he and defendant had an agreement and a plan, including where defendant was supposed to have parked at the Walmart. Tower testified that defendant understood what Tower intended and agreed to the plan. Furthermore, defendant did not merely park and wait for Tower to return, but in fact moved his car in the parking lot and was expected to have been located to facilitate Tower's easy escape. Defendant responded to Tower's request for a pickup after fleeing to the Big Boy restaurant instead of abandoning Tower to his fate. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could infer beyond a reasonable doubt that defendant agreed to Tower's shoplifting scheme and to participate in that scheme.

Defendant does not challenge the sufficiency of the evidence as to any of his other convictions. We need not address defendant's hearsay evidence argument, and defendant's sentencing issues are moot in light of the reversal of his convictions.

## VI. CONCLUSION

Defendant's convictions and sentences are reversed, and this matter is remanded. On remand, the Shiawassee County prosecutor's office is disqualified; it may petition the attorney general for appointment of a special prosecuting attorney pursuant to MCL 49.160, but it shall otherwise have no further participation in this matter. In the event the attorney general or appointed successor prosecutor exercises its discretion to charge defendant, accept or offer a plea

agreement, or otherwise pursue a new trial, the matter shall be heard before a different judge.  We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick